[1AMY, Judge.
The employer/health insurer filed a claim against the workers’ compensation insurer for reimbursement of costs of medical treatment paid on behalf of the injured employee. The workers’ compensation judge found medical treatment to be reasonable and necessary and ordered that the health insurer be reimbursed for cost actually incurred. The workers’ compensation insurer appealed. For the following reasons, we affirm.
Factual and Procedural Background
Robert Rhodes was injured in the course and scope of his employment with Dolet Hills Mining Venture (Dolet) on January 25, 1992. As a result of the injury, Mr. Rhodes underwent extensive medical intervention including; two back surgeries, several years of rehabilitation, and pain management treatment. During the course of Mr. Rhodes’ medical treatment, both the workers’ compensation insurer, Old Republic Insurance Company (Republic) and Dolet, as a self-insured health insurer, paid for portions of the treatment. This matter arises out of Dolet’s request for reimbursement of the expenses it paid for medical treatment it alleges arose out of the work-related injury.
Shortly after his accident in 1993, Mr. Rhodes underwent a lumbar discectomy surgery in an attempt to alleviate the resulting back pain. Following that surgery, Mr. Rhodes was able to return to work for Dolet. However, within two weeks of his return, Mr. Rhodes allegedly re-injured his back. Subsequently, on October 26, 1993, Mr. Rhodes underwent a second dis-cectomy and a fusion. During this surgery, the orthopedic surgeon, Dr. Albert Dean, placed rods and pedicle screws in Mr. Rhodes’ back to support the fusion.
|2On September 26, 1994, Dr. Dean released Mr. Rhodes to light-duty work find *1103 ing that he had reached maximum medical improvement. Mr. Rhodes, however, testified that he believed his condition began to worsen after the second surgery. He alleged that his back pain had become unbearable, he had developed bowel and bladder problems, and was able to perform little to no physical activity. On November 2, 1994, Dr. Dean examined Mr. Rhodes again, and found no objective evidence to substantiate Mr. Rhodes’ continuous complaint of pain. After reviewing several x-rays taken of Mr. Rhodes, Dr. Dean opined that the rods and screws used to stabilize Mr. Rhodes’ back were in “good position” and that surgery to remove the hardware would not be an appropriate treatment.
Unwilling to accept Dr. Dean’s diagnosis, Mr. Rhodes proceeded to seek treatment from various doctors in and out of Louisiana in order to relieve his pain. In addition to repeated visits to his urologist, Dr. Milton Eichmann, and to the Natchi-toches Parish Emergency Room, Mr. Rhodes saw Drs. Carl Goodman and Robert Slaughter of the Spine Reconstruction Clinic in Birmingham, Alabama; Drs. Anil Nanda and Carl Goodman at the Louisiana State Medical Center in Shreveport, Louisiana; and Dr. Ross Nelson at the Willis Knighton Center for Pain Medicine. Ail of the physicians and specialists who observed Mr. Rhodes basically determined there was very little that could be done for his pain other than prescriptive medications and pain management therapy.
Still unsatisfied with the treatment recommended, Mr. Rhodes began searching for a physician who would remove the hardware that had been placed in his back. In January of 1998, Mr. Rhodes was examined by Dr. Bob Blacklock, the head of Neurosurgery for the Baylor College of Medicine in Houston, Texas. At first, RDr. Blacklock concluded that Mr. Rhodes was suffering from chronic prostatitis and referred him to a urologist, Dr. Goldfarb. After his examination of Mr. Rhodes, Dr. Goldfarb determined that he did not have prostatitis and sent him back to Dr. Black-lock. It was at this point that Dr. Black-lock agreed to perform surgery on Mr. Rhodes and remove the hardware from his back.
Following the back surgery, Mr. Rhodes explained that the pressure in his back, which had been causing his pain, had been removed. He testified that not only did the surgery performed by Dr. Blacklock substantially alleviate his back pain, but also, that after the surgery he had no further testicular pain, bladder problems, or bowel problems. Mr. Rhodes stated that since this surgery he has not sought any additional medical treatment.
On June 19, 1997, Mr. Rhodes filed a Workers’ Compensation 1008 Disputed Claim Form alleging that Dolet’s workers’ compensation insurer, Republic, had failed to pay certain medical expenses which arose out of his work-related accident. On August 14, 1997, Republic answered and entered a general denial to Mr. Rhodes’ claim stating that he was not “entitled to any additional workers’ compensation benefits or medical expense reimbursement beyond what has already been paid or is continuing to be paid at the present time.”
Mr. Rhodes alleged that when Dr. Dean had released him to work in 1994, after the second back surgery, Republic had essentially stopped paying for medical treatment although it continued to pay indemnity benefits. He alleged that he had attempted on several occasions to receive authorization from Republic to pursue other opinions regarding his condition, but that he never received an answer. It was at this point that Mr. Rhodes turned to Dolet for payment of his medical bills through its injhouse4 healthcare insurance. For the next several years, Dolet paid for the medical treatment Mr. Rhodes received from the various physicians and specialists, including his third surgery with Dr. Blacklock.
On September 10, 1998, Dolet filed a claim against Republic for the reimburse- *1104 merit of $27,104.49, the amount allegedly-paid to date for the medical treatment of injuries allegedly related to his work-related accident. In its answer, Republic stated that the medical payments made by Dolet were “unrelated, unnecessary, and unreasonable medical treatment.” Moreover, Republic argued that it was not responsible for reimbursing Dolet since the medical treatment provided had never been authorized by it as required by the Workers’ Compensation Act.
The parties agreed to submit their claim to the workers’ compensation judge on the briefs and documentary evidence, since the only issues were whether the medical treatment paid for by Dolet was reasonable and necessary, and whether Dolet should be reimbursed for those payments by Republic. In oral reasons for judgment given on February 25, 2000, the workers’ compensation judge answered both issues in the affirmative and awarded Dolet $27,889.78, plus cost. Thereafter, Republic appealed.
Discussion of the Merits

Approval of Medical Treatment

Republic claims that it has paid for all treatment that was necessary and reasonable in regard to Mr. Rhodes’ back injury, in that it authorized and paid for the evaluations conducted by Drs. Dean, Goodman, and Nanda, all of which opined that Mr. Rhodes did not need further surgery. Republic alleges that there is no evidence that Mr. Rhodes, Dolet, or the health care providers made any attempt to get |fiauthorization for any of the medical treatment rendered and, thus, under La. R.S. 23:1142(B), Dolet is not entitled to any reimbursement in excess of the seven hundred fifty dollar limit imposed by the statute.
La.R.S. 23:1142(B)(1) states:
B. Nonemergency care. (1) Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemer-gency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer’s workers’ compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.
The exception to requesting prior approval for medical treatment is provided in La.R.S. 23:1142(E), which states:
E. Exceptions. In the event that the payor has denied that the employee’s injury is compensable under this Chapter, then no approval from the payor is required to the provision of any diagnostic testing or treatment for that injury.
In denying Republic’s assertion regarding the seven hundred fifty dollar limit, the workers’ compensation judge determined that the exception to the prior approval requirement was applicable. The workers’ compensation judge found that the evidence demonstrated Republic’s denial of Mr. Rhodes’ claim for further medical treatment inconsistent with Dr. Dean’s evaluations in 1994. Mr. Rhodes testified that he had attempted several times to secure authorization by contacting different representatives of Republic. In Mr. Rhodes’ 1008 disputed claim form filed June 17, 1997, he clearly indicated that up until that time, he had made numerous amicable demands upon Republic for the payment of the medical treatment but was denied. In its answer, Republic admittedly denied the compensability of Mr. Rhodes’ injury | fibeyond what had already been paid. Mr. Rhodes also testified that during his search for help, he made arrangements to be examined by physicians at the Minnesota Spine Center, a division of the Mayo Clinic. Mr. Rhodes explained that after he drove to Minnesota and arrived at the spine center, the physicians *1105 refused to see him because his workers’ compensation insurer refused to pay.
In review, we find no manifest error in the trial court’s determination that the statutory imposed monetary limit for unauthorized nonemergency treatment was inapplicable. In light of Republic’s continued denial of treatment, we conclude that Mr. Rhodes was not required to repeatedly seek prior approval for the medical treatment sought for his back injury. Curtis v. Wet Solutions, Inc., 98-789 (La.App. 3 Cir. 12/9/98); 722 So.2d 421; Jefferson v. Greer Timber Co., 618 So.2d 21 (La.App. 3 Cir. 1993). Thus, we find this assignment of error meritless.

Out-Of-State Treatment

Republic also alleges that Dolet should be precluded from recovering the expenses arising out of the medical treatment provided by Dr. Blacklock, an out-of-state physician. It alleges that pursuant to La.R.S. 23:1203, out-of-state medical care may only be utilized when the particular care or services are not reasonably available within the State or when it can be provided for comparable cost. Neither or which, Republic argues, has been proved by Dolet.
La.R.S. 23:1203 reads, in pertinent part:
A.Medical care, services, and treatment may be provided by out-of-state providers or at out-of-state facilities when such care, services, and treatment are not reasonably available within the state or when it can be provided for comparable cost.
|7The workers’ compensation judge determined that while medical treatment should be secured in the State whenever possible, given the circumstances involved in this matter, it was appropriate for Mr. Rhodes to have his surgery performed by Dr. Blacklock. We find no manifest error in this ruling.
Mr. Rhodes did not seek treatment from Dr. Blacklock until he had thoroughly sought assistance for his pain from several physicians in Louisiana. Once Dr. Black-lock diagnosed Mr. Rhodes and recommended a third surgery, we do not find that Mr. Rhodes violated La.R.S. 23:1203(A) by allowing Dr. Blacklock to perform the surgery. Bailey v. Smelser Oil & Gas, 620 So.2d 277 (La.1993). Moreover, neither party has indicated that the cost of Dr. Blacklock’s treatment was unreasonable or uncomparable to what would have been charged in Louisiana. Thus, we find this assignment of error to be without merit.

Related Injury

Lastly, Republic asserts that the workers’ compensation judge’s finding that all of the claimed medical treatment was reasonable and necessary is erroneous. Specifically, Republic questions the causal relationship of Mr. Rhodes’ back injury and his bowel and bladder problems.
The workers’ compensation judge, relying on the medical testimony on Drs. Eieh-mann and Blacklock, as well as the medical charts from Mr. Rhodes’ visits to the ER, unquestionably found that the medical treatment paid for by Dolet, on behalf of Mr. Rhodes, was necessary and occasioned by his work-related accident. Mr. Rhodes testified, and the medical records indicate, that after the second back surgery, his condition worsened. He stated that the pain in his back increased and that he began experiencing bowel and bladder problems. Mr. Rhodes was seen in the Natchitoches |sParish ER numerous times complaining of back pain and simultaneous bladder dysfunction, and had to be hospitalized approximately eight times for the same. After the third surgery, Mr. Rhodes’ back pain considerably lessened and he has not sought further medical treatment for his bladder and bowel problems.
A workers’ compensation judge’s factual findings on the issues of the necessity of medical treatment and of a causal relationship between the treatment and the employment related accident are subject to a manifest error-clearly wrong standard of *1106 review. Freeman v. Poulan/Weed Eater, 93-1530 (La. 1/14/94); 630 So.2d 733; Scherer v. Interior Plant Design, 98-702 (La.App. 3 Cir. 10/28/98); 724 So.2d 797, writ denied, 99-0297 (La.3/26/99); 739 So.2d 792. Finding none, we deny Republic’s assignment of error on this issue.
DECREE
For the foregoing reasons, the judgment of the Office of Workers’ Compensation is affirmed. All costs of this appeal are assessed to the defendant/appellant, Old Republic Insurance Company.
AFFIRMED.